**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In the Matter of E.Z. and S.Z.** | **No. 21-cv-6524-MKV** |
| **ARNALDUR SCHRAM** | **Hon. Mary Kay Vyskocil** |
| **Petitioner,** | |
| **vs.** | |
| **TANIA ZARAK** | |
| **Respondent.** | |

# ANSWER

Responden Tania Zarak ("Respondent") by and through her counsel, answers Petitioner Arnaldur Schram's ("Petitioner") Petition as follows:

## Preamble

1. This Petition is brought by Arnaldur Schram ("Mr. Schram" or "Petitioner"), to secure the return of his six-year-old daughter, E.Z., and his two-year-old son, S.Z. (the "Children"), who were, without Petitioner's consent or acquiescence, wrongfully retained from Iceland to the Southern District of New York by Children's mother, Respondent Tania Zarak ("Ms. Zarak" or "Respondent."). This petition is filed pursuant to the Convention on the Civil Aspects of International Child Abduction, done at the Hague on October 25, 19801 (hereinafter the "Hague Convention" or "Convention") and the International Child Abduction Remedies Act (hereinafter "ICARA") 22 U.S.C. § 9001 *et seq*. The Convention came into effect in the United States on July 1, 1988 and was also ratified between the United States and Iceland on December 1, 1996. A copy of the Hague Convention and ICARA are annexed hereto as Exhibit A and B, respectively (*not attached*).

3. The Convention is a treaty between sovereign states, and theretofore entitled to the same weight and deference as the Constitution of the United States.

4. The objects of the Convention are as follows: (1) to secure the immediate return of children wrongfully removed or wrongfully removed in any Contracting State;

and (2) to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in other Contracting States. Convention, art. 1.

5. The Hague Convention applies to cases in which one parent wrongfully removes or retains her or his child, who is under the age of sixteen (16) years, from the child's "habitual residence" in breach of the other parent's custodial rights, which were being exercised at the time of the wrongful retention of the child. Hague Convention, Art. 3.

6. Petitioner respectfully requests that pursuant to Articles 1(a) and 12 of the Convention, this Court order that the subject Children be returned to Iceland, the Children's habitual residence.

**ANSWER: Respondent denies the allegations set forth in Paragraph 1 to the extent that there was no wrongful removal of the minor Children from Iceland to the Southern District of New York, except that she admits that Petitioner brings this action under the auspices of the Convention on the Civil Aspects of international Child Abduction and 22 U.S.C. § 9001, et. seq., as set forth in this paragraph. Paragraphs 3, 4, 5 and 6 assert legal conclusions to which no response is required.**

## Jurisdiction and Venue

7. This Court has jurisdiction pursuant to 22 U.S.C. § 9003(a) (jurisdiction under the Hague Convention) and 28 U.S.C. § 1331 (federal question jurisdiction).

**ANSWER: This paragraph asserts legal conclusions to which no response is required.**

8. Venue is proper pursuant to 22 U.S.C. § 9003 and 28 U.S.C. § 1391(b) because, upon information and belief, the Children and Respondent are residing at 11 West 81st Street, Apt. 6A, New York, NY, in the Southern District of New York; and

because this case involves the removal and retention of children under the ages of sixteen from their habitual residence of Iceland in the United States of America.

**ANSWER: This paragraph asserts legal conclusions to which no response is required however admits that Respondent and the Children, who are under age 16, are residing at the marital residence located 11 West 81st Street, Apt. 6A, New York, NY and asserts that the United States is Children's habitual residence.**

**<u>History of the Case and Status of Petitioner and Child</u>**

9. The parties are the parents of the subject Children who are dual citizens of Iceland and the United States. There is a third child, R.Z., who is not a subject of these proceedings as he is currently residing with the father in Iceland. FN 2. The father has Icelandic citizenship. The mother has Mexican citizenship.

**ANSWER: Admits the allegations contained in this paragraph except that the Children are also citizens of Mexico; neither admits nor denies that the third child, R.Z., is residing with the father in Iceland and asserts that R.Z. was wrongfully retained in Iceland by Petitioner.**

10. The parties were married in New York on April 9, 2015.

**ANSWER: Admits the allegations contained in this paragraph.**

11. E.Z. was born in 2014 in New York.

**ANSWER: Admits the allegations contained in this paragraph.**

12. S.Z. was born in 2019 in California.

**ANSWER: Admits the allegations contained in this paragraph.**

13. After the parties' marriage, they resided in New York until approximately July 2018 when the family relocated to Los Angeles, California for Respondent's work. After Respondent lost her job the family moved back to New York on or about July 31, 2019. The family resided in Respondent's family's one-bedroom apartment where the Children's nanny slept in the bedroom and the parties' and the Children slept in the living room.

**ANSWER: Admits that after the parties' marriage they resided in New York and that they went to Los Angeles in or about July 2018 when Respondent was hired by Netflix except that they continued to maintain the marital residence in New York while they were in Los Angeles where Petitioner stayed when he traveled to and from New York for work while Respondent and the children were in Los Angeles; denies that in New York they lived in a one-bedroom apartment where the Children's nanny slept in the bedroom and the parties' and the Children slept in the living room.**

14. After the COVID-19 pandemic erupted in or around March 2020, the parties and the Children moved to Cuernavaca, Mexico where they remained until July 2020. The parties and the Children stayed in New York for a short period before moving to Iceland on or about July 31, 2020 on one-way tickets. Shortly after arriving in Iceland, the parties purchased a home for the family in or around September 2020. The parties and the Children moved into the new home on or around November 1, 2020 which is where Petitioner and R.Z. continue to reside.

**ANSWER: This paragraph asserts legal conclusions to which no response is required but Respondent admits that in March 2020, after the COVID-19 pandemic erupted, the parties and the children went to Cuernavaca, Mexico where they remained with Respondent's family until July 2020 when they returned to the marital residence in New York and then on July 31, 2020, due to the COVID-19 Pandemic and their learning that the Children's school would not be open for in-person classes, using one-way plane tickets because the parties did not have an exact date to return since there were so many unknowns concerning the COVID-19 pandemic, the parties and the children went to Iceland and upon their arrival in Iceland they stayed in several different Airbnbs before Petitioner suggested to Respondent that they could save money if they purchased a home that they would be able to sell at a profit in the future, considering that there were zero interest rates on the money borrowed from the bank to make this purchase.**

15. Respondent traveled to New York in May 2021 with S.Z. before returning to Iceland on or around May 24, 2021. After returning to Iceland, Respondent became upset with the quarantine regulations and threatened Petitioner that she would disappear with the Children if he insisted she comply with the quarantine rules. Respondent also informed Petitioner that she had secured the services of a lawyer and suggested he do the same. Petitioner also discovered that Respondent had secretly attempted to enroll the Children in school in New York without his knowledge. FN 3. Petitioner, concerned with Respondent's behavior and afraid that Respondent would

abscond with the Children, put in place restrictions to prevent the Children from leaving the country with the Icelandic border police.

**ANSWER: Admits that Respondent returned to New York in May 2021 so that she could visit family in New York and take S.Z. to his annual visit with his pediatric chiropractor who he has been seeing since his birth and check on the marital residence in Manhattan; denies that she informed Petitioner that she had secured the services of a lawyer and suggested he do the same except that Respondent suggested Petitioner hire a lawyer regarding their signing a postnuptial agreement; denies that she threatened Petitioner that she would disappear with the children if he insisted she comply with the quarantine rules; denies having secretly attempted to enroll the children in school in New York and asserts that Petitioner discussed enrollment of the children in school in New York in or about June 2021; and does not have knowledge or information sufficient to form a belief to address the allegation that Petitioner put in place restrictions to prevent the Children from leaving the country with the Icelandic border police except that Petitioner demanded that he keep Roman and his passport in his possession if Respondent wanted to leave the country.**

16. Respondent then expressed her desire to travel to Mexico for a family reunion. Still concerned that Respondent was intending to take the Children, Petitioner agreed that Respondent could travel with E.Z. and S.Z. to Mexico for a family reunion on or around June 17, 2021, assuming that Respondent would return as long as R.Z. was still in Iceland with him.

**ANSWER: Denies having knowledge or information to comment on Petitioner's assumptions and or concerns but admits that Respondent did travel with the Children to Mexico using one-way plane tickets for a family reunion on June 17, 2021 which was a family reunion that had been in the works since in or about 2018 and which coincided with Respondent's father getting very ill.**

17. However, on or around June 22, 2021, Respondent informed Petitioner that she was not planning to return to Iceland with the Children. On or around July 21, 2021, Respondent and the two subject Children traveled to New York. Respondent refused to allow the Children to return to Iceland and stated that her intention was to remain in the United States in contravention of the parties' last shared intention.

**ANSWER: Denies that on or around June 22, 2021, Respondent informed Petitioner that she was not planning to return to Iceland with the Children; Admits that on or around July 21, 2021, Respondent and the two subject Children traveled to New York; denies the allegation that Respondent refused to allow the Children to return to Iceland as no requests were made by Petitioner for Respondent to return the Children to Iceland and denies that Respondent stated her intention was to remain in the United States in contravention of the parties' last shared intention as there was never a shared desire or intention for Iceland to be the family or the Children's permanent home.**

18. Respondent has initiated divorce proceedings, including a request for custody, in New York based upon her fraudulent and deceitful actions in illegally removing and retaining the Children in New York.

**ANSWER: This paragraph asserts legal conclusions to which no response is required but Respondent admits that she initiated divorce proceedings, including a request for custody, in New York; Respondent denies that the divorce proceedings are based on her fraudulent and deceitful actions in illegally removing and retaining the Children in New York and states that included in the relief requested in the divorce proceeding is a request for the immediate return of R.Z. to New York.**

19. Petitioner never consented to the Children remaining in the United States. The parties never shared an intent to abandon Iceland, where the parties continue to have their home and where the Children have been continuously registered in school, as the Children's home in favor of the United States.

**ANSWER: Respondent denies the allegations set forth in this paragraph.**

20. The Children are acclimatized, involved and integrated in all aspects of daily life in Iceland. The Children went to school, received medical care, were engaged in activities and have extended family in Iceland. Respondent even applied to and was accepted to an MBA program at the University of Reykjavik in Iceland.

**ANSWER: Respondent denies the allegations in this paragraph, except that E.Z attended school in Iceland for the 2020-2021 academic year,**

**Petitioner has extended family in Iceland and Respondent applied to and was accepted to an online MBA program in which she did not enroll.**

21. Petitioner has rights of custody to the Children in Iceland as fully set forth below, and he had those same rights of custody on the date Respondent wrongfully retained the Children from their habitual residence of Iceland on June 22, 2021.

**ANSWER: This paragraph asserts legal conclusions to which no response is required. To the extent that this paragraph contains factual allegations to which a response is required, Respondent denies those allegations.**

**Wrongful Removal and Retention of Child by Respondent: Claim for Relief Under the Hague Convention**

22. A removal or retention of a child is wrongful under Article 3 of the Hague Convention if: (a) the removal or retention is in breach of custody rights attributed to a person, institution, or other body, either jointly or alone, under the law of the state in which the child was habitually resident immediately before the removal or retention; and (b) at the time of the removal or retention, those custody rights were actually exercised, or would have been exercised, but for the removal or retention of the child. *See* Hague Convention, Arts. 3 and 5.

**ANSWER: This paragraph asserts legal conclusions to which no response is required.**

23. The Children's country of "habitual residence", as defined in Article 3 of the Hague Convention, is Iceland, which is where the Children habitually resided prior to the wrongful retention in the United States on or about June 22, 2021.

**ANSWER: This paragraph asserts legal conclusions to which no response is required. To the extent that this paragraph contains factual allegations to which a response is required, Respondent denies those allegations.**

24. Petitioner has rights of custody of the Children within the meaning of Articles 3 and 5 of the Convention.

**ANSWER: This paragraph asserts legal conclusions to which no response is required. To the extent that this paragraph contains factual allegations to which a response is required, Respondent denies those allegations.**

25. "Custody rights" under the Hague Convention are defined to include "rights relating to the care of the person of the child, and in particular, the right to determine the child's place of residence." See Hague Convention, Art. 5(a).

**ANSWER: This paragraph asserts legal conclusions to which no response is required.**

26. "Custody rights" "may arise in particular by operation of law or by reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the law of that State." See Hague Convention, Art. 3.

**ANSWER: This paragraph asserts legal conclusions to which no response is required.**

27. At the time of Respondent's wrongful removal and retention of the Children from Iceland, the Petitioner had and continues to have rights of custody under Icelandic law, such that the retention of the Children from Iceland is in violation of Icelandic law and is a wrongful retention within the meaning of Articles 3 and 5 of the Hague Convention.

**ANSWER: This paragraph asserts legal conclusions to which no response is required. To the extent that this paragraph contains factual allegations to which a response is required, Respondent denies those allegations.**

28. In *Nelson v. Petterle*, 782 F. Supp. 2d 1081, 1092 (E.D. Cal. 2011), another Hague Convention case involving Iceland, the district court stated that "Under Iceland law, 'the custody of a child entails that the parents have the right and obligation to manage the personal affairs of their child and determine his place of residence.'" *Id. citing* Iceland's Children Act, no. 76/2003, art. 28.

**ANSWER: This paragraph asserts legal conclusions to which no response is required.**

29. Iceland's Children Act No. 76/2003, articles 28, 28a and 29 speak to the joint custody provisions and what that entails, including deciding on the place of the child's residence. Article 31 of the Children Act states that the parties shall continue having joint custody over the children even after divorce or dissolution of cohabitation

unless other arrangements are determined. A copy of the Children Act is annexed hereto as Exhibit C. (*not attached*).

**ANSWER: This paragraph asserts legal conclusions to which no response is required.**

30. Notice is given in this pleading that the Petitioner is relying upon foreign law. Fed.R.Civ.P. 44.1.

**ANSWER: This paragraph asserts legal conclusions to which no response is required.**

31. At the time of the Respondent's wrongful removal and retention of the Children, the Petitioner was actually exercising custody rights within the meaning of Articles Three and Five of the Convention, in that he is the father of the Children and has exercised custody rights over the Children since they were born.

**ANSWER: This paragraph asserts legal conclusions to which no response is required. To the extent that this paragraph contains factual allegations to which a response is required, Respondent denies those allegations.**

32. E.Z. was born in 2014 and will be sixteen (16) years of age in 2030. At the time immediately before the wrongful retention of the Child from Iceland, the Child habitually resided in Iceland within the meaning of Article 3 of the Convention.

**ANSWER: This paragraph asserts legal conclusions to which no response is required except that Respondent admits that E.Z. was born in 2014 and will be sixteen (16) years of age in 2030.**

33. S.Z. was born in 2019 and will be sixteen (16) years of age in 2035. At the time immediately before the wrongful retention of the Child from Iceland, the Child habitually resided in Iceland within the meaning of Article 3 of the Convention.

**ANSWER: This paragraph asserts legal conclusions to which no response is required except that Respondent admits that S.Z. was born in 2019 and will be sixteen (16) years of age in 2035.**

34. The details regarding the residences of the minor Children for the last five years are as follows: From July 29, 2016 to June 30, 2018 in New York; From June 30, 2018 to July 31, 2019 in California; From July 31, 2019 to March 16, 2020 in New York; From March 16, 2020 to July 9, 2020 in Mexico; From July 9, 2020 to July 31, 2020 in New York; From July 31, 2020 to June 17, 2021 (or present) in Iceland.

**ANSWER: Respondent admits that the Children have been in the locales referred in this paragraph during the times set forth except that E.Z. has been in New York from her birth on August 28, 2014 to June 30, 2018, and the Children have not been in Iceland since June 17, 2021.**

35. Petitioner does not know of any person or institution not a party to the proceedings who has physical custody of the child or claims to have rights of parental responsibilities or legal custody or physical custody of, or visitation or parenting time with the child.

**ANSWER: Respondent denies knowledge or information sufficient to form a belief as to the allegations in this paragraph.**

36. Following the abduction by the Respondent from Iceland to the United States, the Children are currently being illegally held in custody, confinement and/or restraint by the Respondent in the Southern District of New York. Upon information and belief, Respondent is keeping the Children at 11 West 81st Street, Apt. 6A, New York, NY.

**ANSWER: This paragraph asserts legal conclusions to which no response is required; Respondent denies that there was an abduction by the Respondent from Iceland to the United States and that the Children are currently being illegally held in custody, confinement and/or restraint by the Respondent in the Southern District of New York except admits that Respondent is residing with the Children in the parties' marital residence located at 11 West 81st Street, Apt. 6A, New York, New York where the Children are sleeping in their beds in their bedroom that contains their clothing, books, toys, artwork, and the like.**

37. The Children are now six (6) and two (2) years old. The Hague Convention applies to children under sixteen (16) years of age and thus applies to these Children. Petitioner has never consented or acquiesced to Respondent's wrongful removal and/or retention of the Children.

**ANSWER: This paragraph asserts legal conclusions to which no response is required. The older Child is now seven (7) years old and Respondent admits that the younger child is two (2) years old, and neither**

**admits nor denies that Petitioner has never consented or acquiesced to Respondent's wrongful removal and/or retention of the Children.**

38. Petitioner invokes Article 18 of the Convention, which grants this Court plenary power to order the Children's return at any time.

**ANSWER: This paragraph asserts legal conclusions to which no response is required.**

39. In accordance with the Article 18 equitable return factors set forth in Justice Alito's concurring opinion in *Lozano v. Montoya Alvarez*, 134 S.Ct. 1224 (2014), the Father requests that this Court exercise its equitable discretion to return the Children to Iceland under Article 18 even if the Mother establishes one of the Convention's five narrow discretionary exceptions to return under the Convention.

**ANSWER: This paragraph asserts legal conclusions to which no response is required.**

40. The Children have an interest in returning to Iceland, their country of habitual residence. The Children have a strong need for regular contact with the Father, who was exercising rights of custody at the time the Children were retained from Iceland. The Father has an interest in exercising his Icelandic rights of custody in Iceland.

**ANSWER: This paragraph asserts legal conclusions to which no response is required. Respondent neither admits nor denies whether the Children have a strong need for regular contact with the Father; neither**

**admits nor denies that the Father was exercising rights of custody at the time the Children were retained from Iceland; denies that the Children have an interest in returning to Iceland; denies that the Father has an interest in exercising his Icelandic rights of custody in Iceland.**

41. The Governments of Iceland and the United States both have an interest in discouraging inequitable conduct and deterring international child abductions.

**ANSWER: This paragraph asserts legal conclusions to which no response is required.**

**Provisional Remedies**

42. The Father requests that the Court issue a Show Cause Order forthwith ordering the appearance of the Mother and Children before this Court on the first available date on the Court's calendar, and immediately take into safe-keeping all of the Children's passports.

**ANSWER: Respondent denies this paragraph as moot. Respondent has provided her own and the Children's passports to her attorney, Michael F. Beyda, Esq. of Chemtob Moss Forman & Beyda, LLP.**

43. The Father further requests that this Court order, as a part of the Show Cause Order, a provision prohibiting either party from removing the Children from the jurisdiction of this Court during the pendency of the proceedings in this Court and thereafter issuing a Scheduling Order setting an expedited hearing on the Verified Petition for Return of Children to Iceland.

**ANSWER: Respondent denies this paragraph as moot.**

**Attorney's Fees and Costs**

44. To date, Petitioner has incurred attorneys' fees and costs as a result of the wrongful retention of the Children by Respondent.

**ANSWER: Respondent denies knowledge or information sufficient to form a belief as to the allegations in this paragraph.**

45. Petitioner respectfully requests that this Court award him all costs and fees, including transportation costs, incurred to date as required by 22 U.S.C. § 9007.

**ANSWER: Respondent denies this paragraph to the extent a response is required.**

46. Petitioner will submit a copy of all expenditures as soon as practicable and possible and will amend these costs, from time to time, according to proof and in light of further expenditure required because of this wrongful removal and retention.

**ANSWER: Respondent denies knowledge or information sufficient to from a belief as to the remaining allegations in this paragraph.**

**Notice of Hearing**

47. Pursuant to 22 U.S.C. § 9003(c), Respondent will be given notice of any hearing pursuant to New York Civil Practice Laws and Rules and any other applicable law.

**ANSWER: Respondent denies knowledge or information sufficient to from a belief as to the remaining allegations in this paragraph and is moot considering that a hearing has been scheduled to commence on October 4, 2021.**

## Relief Requested

**WHERETOFORE**, it is respectfully requested that the following relief be granted:

a. Set an expedited hearing on the petition and communicate that hearing date and time to petitioner so that petitioner may provide notice of these proceedings and the hearing pursuant to ICARA Section 9003(c).

b. Issue an immediate order that Respondent surrender any and all of her passports and all of the passports of the Children.

c. Issue an order following the hearing, directing that the Children shall be returned to their Habitual Residence of Iceland, pursuant to Article 12 of the Convention.

d. Enter an order prohibiting the removal of the Children from the jurisdiction of this Court pending a hearing on the merits of the Verified Petition, and further providing that no person acting in concert or participating with Respondent shall take any action to remove the Children from the jurisdiction of this Court pending a determination on the merits of this case.

e. Issue an order directing Respondent to pay Petitioner for all costs and fees incurred to date by reason of the Children's wrongful removal and retention pursuant to 22 U.S.C. § 9007; and

f. Any such further relief as justice and its cause may require.

**ANSWER: Respondent denies all paragraphs of this section to the extent response is required.**

## DEFENSES

Respondent asserts the following defenses based upon her present knowledge of the circumstances giving rise to the Petition. Respondent reserves the right to supplement these defenses upon learning of additional facts that are not currently known.

**FIRST DEFENSE**

To the extent that any specific allegation in the Petition is not addressed, that allegation is hereby denied.

**SECOND DEFENSE**

The Petition fails to state a claim upon which relief can be granted.

**THIRD DEFENSE**

The Petition should be dismissed because the Petitioner cannot show that the Children were habitual residents of Iceland. The Petition fails to state a claim upon which relief can be granted as the subject Children's habitual residence is the United States of America. It was always the parties' joint intention to reside and raise the subject Children in the United States. Respondent and the Children only went to Iceland to escape New York during the COVID-19 Pandemic and always intended to return to New York.

**FOURTH DEFENSE**

The Petition should be dismissed because the Petitioner cannot show that the Children were wrongfully removed from Iceland.

## FIFTH DEFENSE

The Petition should be dismissed because the Petitioner cannot show that the Children were wrongfully retained in the United States.

## SIXTH DEFENSE

The Petition should be dismissed pursuant to Art. 13 of the Hague Convention because the Children object to being returned to Iceland and have attained an age and degree of maturity that makes it appropriate for the Court to take account of the child's views.

## SEVENTH DEFENSE

The Petition is barred by the doctrines of unclean hands, estoppel, and waiver as a result of Petitioner wrongfully retaining R.S. in Iceland.

## ADDITIONAL RELEVANT BACKGROUND

48. Prior to the COVID-19 Pandemic, for all but several months in 2018-2019, from in or about 2014 through the start of the COVID-19 pandemic in March 2020, the family lived as a cohesive family-unit in Manhattan in Respondent's apartment located at 11 West 81st Street, Apartment #6A, New York, New York (the "NY Residence").

49. Prior to the COVID-19 pandemic, the Children attended P.S. 9 and the Broadway Presbyterian Church Nursery School in Manhattan. Their pediatrician, Dr. Mark Nesselson was and continues to be in Manhattan as does their dentist,

chiropractor, and other providers. The Children have received all their vaccines in New York; none in Iceland. The Children's medical and dental records all remain in New York; none of their records were ever transferred to Iceland.

50. The family fled New York on March 16, 2020 at the height of the COVID-19 pandemic and went to stay in Mexico with Respondent's family (COVID-19 was not as rampant there at that point).

51. While the family was quarantining in Mexico, E.Z. completed Kindergarten at PS 9 in Manhattan and R.Z. completed Broadway Presbyterian Church Nursery School in Manhattan via Zoom. Although both of the Children were able to complete their schooling via Zoom, it was not without issues and its difficulties.

52. E.Z., who is a very active child, had a lot of difficulty spending her day staring at a computer and attending Zoom School.

53. In or about late May/early June 2020, while the family was still quarantining in Mexico, they made plans to return to New York so that the Children could resume school in-person that fall.

54. To effectuate the Children's enrollment in school, Respondent submitted all of the necessary paperwork to enroll the Children in school in Manhattan for the 2020-2021 academic year. At that time, it was the parties' joint intention to return from Mexico and remain in New York.

55. In or about June 2020 the parties began to hear rumors that in September 2020, schools in New York were going to remain virtual. At that point, Petitioner

suggested, and Respondent agreed, to weather the COVID-19 pandemic temporarily in Iceland where the schools remained open.

56. In July 2020, the family traveled from Mexico to New York to pick up some personal property before going to temporarily reside in Iceland. At that time, the family remained in New York for three (3) weeks. While in New York, the Children were thrilled to be back in their home, sleeping in their beds, seeing their friends and playing with their toys just as is the situation at the present time.

57. Prior to fleeing New York and after arriving in Iceland, Respondent advised her friends, family, and the Children's providers, including their schools, among others, that they were temporarily quarantining outside Manhattan during the COVID-19 pandemic.

58. When it came time for the family to leave New York, Respondent packed one (1) suitcase for each of the Children and herself and some boxes with some of their toys while leaving the vast majority of their personal property in Manhattan because they planned to return to their permanent home in Manhattan as soon as they could.

59. The family left for Iceland on July 31, 2020, to (a) temporarily escape the COVID-19 pandemic in New York, and (b) so the Children would be able to attend in-person school in Iceland since the schools were open and COVID-19 cases appeared to be under control and were few and far between.

60. Upon their arrival in Iceland, Respondent only applied for a one-year Icelandic residency permit based on the parties' last joint intention to return to New York after the COVID-19 pandemic.

61. Upon their arrival in Iceland, the parties stayed in AirBnB rentals. Then, after realizing that the month-to-month and or one (1) year rentals were very expensive the parties decided that it made sense to buy a small apartment that would have a monthly mortgage/carry costs of approximately $1,500 instead of continuing to pay rent for an Airbnb of approximately $2,900 per month, and which they would either sell for a profit, rent on Airbnb, or use as a vacation home.

62. While in Iceland, the family continued to maintain their residence in Manhattan, did not sublet it and maintained the expenses associated therewith.

63. Going to Iceland during the COVID-19 pandemic was a temporary absence from New York until the Children could resume in-person school in Manhattan.

Dated: August 25, 2021

Respectfully submitted,

By: ______________________
Michael F. Beyda
Chemtob Moss Forman & Beyda, LLP
527 Madison Ave., 7th Floor
New York, NY 10022
(212) 317-1717
*ATTORNEYS FOR RESPONDENT*

**VERIFICATION**

State of New York )
)ss:
County of New York )

I, Tania Zarak, solemnly declare and affirm under the penalties of perjury and the laws of the United States of America, that I am the Respondent in the within action and have read the foregoing Answer and know the contents of the foregoing Answer are true, to the best of my knowledge, except as to those matters alleged upon information and belief.

Dated: August 25, 2021

TANIA ZARAK

Sworn to before me on
the 25th of August, 2021

Notary Public

MICHAEL F. BEYDA
Notary Public, State of New York
No.: 02BE6059548
Qualified in New York County
Commission Expires October 17, 2023

**CERTIFICATE OF SERVICE**

The undersigned counsel for respondent hereby certifies that a true and correct copy of the foregoing document was filed with the Court and served electronically through the CM-ECF (electronic case filing) system to all counsel of record to those registered to receive a Notice of Electronic Filing for this case on August 25, 2021.

Dated: August 25, 2021

MICHAEL F. BEYDA