UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

ARNALDUR SCHRAM,

Petitioner,

v. 21 cv 6524 (MKV)

TANIA ZARAK,

Respondent. Hearing
(via Microsoft Teams)

------------------------------x

New York, N.Y.
August 18, 2021
1:10 p.m.

Before:

HON. MARY KAY VYSKOCIL,

District Judge

APPEARANCES

BURGER GREEN & MIN LLP
Attorneys for Petitioner
BY: RICHARD MIN
MICHAEL BANUCHIS

CHEMTOB MOSS FORMAN & BEYDA
Attorneys for Respondent
BY: NANCY CHEMTOB
MICHAEL BEYDA
MUDITA CHAWLA

(Case called)

MR. MIN: Richard Min and Michael Banuchis of the firm Burger Green & Min LLP for petitioner, Arnaldur Schram. Good afternoon, your Honor.

THE COURT: Good afternoon.

MR. BEYDA: Michael Beyda and Nancy Chemtob for the respondent, Tania Zarak. Good afternoon, your Honor.

THE COURT: Good afternoon.

Is your colleague, Ms. Chemtob, on the video?

MS. CHEMTOB: That's me, your Honor. I'm under Sarah Marron by mistake, but I am Nancy Chemtob.

THE COURT: That's what confused me. It says Sarah.

Any other appearances? I see we have the respondent, Ms. Zarak with us, is that correct?

MS. ZARAK: Yes. Good afternoon.

THE COURT: Good afternoon.

Is Mr. Schram with us?

MR. MIN: Yes, your Honor. He's on audio.

THE COURT: Good afternoon.

Ms. Zarak, your photo is there, but it seems to be a photo, not a live audio, is that correct?

MS. ZARAK: I don't know why, your Honor -- I don't know why you don't see me. My video is on. I wouldn't want to disconnect and reconnect. I'm not sure what is happening with my Teams platform. I apologize.

THE COURT: It's not a problem. If you want to try to do what you can do while you are listening in, that's fine, but it's not necessary for me to be able to see you unless you wish for that to happen.

We are here for a hearing on the order to show cause that I issued in this case. We are proceeding remotely on Teams by video conference both because of restrictions that remain in place as a result of COVID-19, but also because of the need for us to proceed expeditiously with this matter.

As I say, I entered an order to show cause directing that I would hear originally at noon today. I had to push it back because there was a funeral that caused the rescheduling. But I have laid out in that order the issues that I wish to have addressed today.

I have read everybody's papers. I have the petition that was filed by Mr. Schram. I have the opposition papers that were filed by Ms. Zarak. I will hear first from counsel to Mr. Schram as the petitioner.

MR. MIN: Thank you, your Honor.

THE COURT: When you are addressing me, bear in mind that I did carefully review the papers.

I'm sorry. Let me just say a couple of other things. Although we are proceeding remotely by Teams, this is a formal court hearing as if we were in open court. We did post on the court docket the contact information for today's hearing. This

hearing is open to the press and to the public. You should be aware of that. If there is anything that is confidential, you need to alert me to that, but, otherwise, this is an open court proceeding as if we were in the courtroom in the Southern District of New York.

You are, as all court proceedings, strictly prohibited from recording or rebroadcasting any portion of today's hearing, and I would just remind you, when you speak, please identify yourself for the record, just as a reminder to me of who it is who is speaking to me, but also so that Mr. Greenblum can get an accurate transcript of what happens today.

As I said, I will hear from counsel for Mr. Schram as the petitioner. Who is going to be taking the lead?

MR. MIN: Thank you, your Honor. Richard Min speaking.

THE COURT: All right, Mr. Min.

MR. MIN: Your Honor, I will make this quite brief. Reading respondent's opposition papers, I think one thing is clear, there is a dispute as to the country of habitual residence. The respondent alleges great risk of harm, article 13(B) defense. We have not received a formal response to the petition, but I think their opposition to the motion signals where they intend for this case to go.

One thing of note in their closing is that they agree that this case should move on an expedited basis, which is the

subject of our motion. That being said, there is guidance that the cases should attempt at least to be decided within six weeks. We understand and acknowledge that that doesn't always happen.

THE COURT: No. If I determine that it's appropriate for us to move forward, the Court will move expeditiously.

MR. MIN: Yes, your Honor. What we would propose in this case is to put forth an expedited schedule with limited discovery and a fact-finding hearing no later than late September, your Honor. That would be our proposal.

THE COURT: Let me ask counsel for the respondent, Ms. Zarak.

I would rather call you by your names than call you petitioners and respondents. This is more than many cases that I have to handle fundamentally about people and about human beings.

Who is going to be taking the lead on behalf of Ms. Zarak?

MR. BEYDA: Michael Beyda, your Honor.

THE COURT: Mr. Beyda, let me just ask you, do you disagree that we ought to set a schedule to move forward with things expeditiously?

I do think, I have to say, having read the papers, that Mr. Min does fairly characterize the issues that have been joined here. There is clearly a fundamental dispute about what

is the habitual residence of these two children, and there is certainly a specter of raising a grave risk of harm, which I assume will be amplified if we move forward.

So do you disagree that we need to move forward with an evidentiary hearing and that we should do so expeditiously?

MR. BEYDA: I do not disagree with moving forward expeditiously at all.

I would only highlight one key component that I think cannot be overlooked in the big picture of this family's current situation which, obviously, is the COVID-19 pandemic.

And I appreciate your Honor mentioning to us that you reviewed the papers.

Now, because it's such a personal issue and we are dealing with the lives of, granted, two children who are the subject of the proceeding before your Honor. There is a third child.

THE COURT: Yes. I'm aware of that.

MR. BEYDA: We have a state court proceeding, also, that is concerning the child who continues to be in Iceland.

THE COURT: It's regarding all three children, right?

MR. BEYDA: It's regarding all three on a high level regarding custody of them. But on a specific, isolated level it pertains to the immediate return of the child [redacted], who remains in Iceland, and our request that he be immediately reunited with his siblings in their habitual residence, New

York City --

THE COURT: Let me just ask you, who is that in front of in the state court?

MR. BEYDA: That is before the Honorable O'Neill Levy. Supreme.

THE COURT: In New York Supreme?

MR. BEYDA: New York Supreme.

THE COURT: New York County?

MR. BEYDA: Yes.

THE COURT: Did you say he or she?

MR. BEYDA: She.

THE COURT: I didn't hear the first name you said.

MR. BEYDA: O'Neill Levy. Kelly O'Neill Levy.

THE COURT: Have you informed Justice Levy of this proceeding?

MR. BEYDA: Yes, we have. We actually had a conference call with the judge's law secretary last -- I believe it was Friday.

Just so your Honor is aware, we discussed the issue of the appropriateness of a stay concerning the issues raised in the New York County case, the state case, and whether or not the automatic stay in this matter, under the Hague, would apply to the child who is not a subject of this proceeding.

We did take the position, just so your Honor is fully aware, I'm blunt to a fault at times, that in the best

interests of the child who remains out of the country, that he should be reunited with his siblings in their home in New York County and that the automatic stay, in theory, from this matter should not apply to that child who is not a subject of this proceeding.

THE COURT: When you say the automatic stay, tell me what you mean by that.

MR. BEYDA: I understand, under the Hague Convention, that there is a stay concerning the state court's ability to issue orders concerning the children who are the subject of this proceeding.

Now, the child, the third child is not a subject of this proceeding. As expedited as we want this case to be, the reality is, based on the age of that child, he is four years old, every day is like a year, at the end of the day because of how young he is.

THE COURT: It's my understanding the other two children are two and six, is that correct?

MR. BEYDA: That's correct. Almost seven. Next week, I believe.

THE COURT: The child that was left in Iceland is five or four?

MR. BEYDA: Four years old, your Honor.

My concern and the concern of, I think, the mother over here is, although we are going to have an expedited

proceeding, which is nice to see we all agree, that expedited proceeding, at the end of the day, will still be a lengthy duration in the life of the child who is still away from his mother and siblings. That's the issue on a human level.

THE COURT: I understand that. I don't know what you are asking me to do, though. The child is not here, so --

MR. BEYDA: I understand that. I raise it only in the context to provide that additional information to the Court, to also advise that that issue is moving forward in the state court before Judge Kelly O'Neill Levy. If anything, I want to ensure that the state court proceeding can move forward.

THE COURT: That's a question that I have. You said you discussed with Justice Levy's law secretary whether that could move forward. What was the ruling or the outcome?

MR. BEYDA: When the issue was raised by Mr. Schram's counsel, we had not yet been in receipt of the petition or order to show cause before your Honor, and it was unknown to us that the papers submitted to this Court only pertained to two of the children.

A determination was not made during the conference call whether or not a stay would be issued, but, rather, the issue was actually briefed and, as of 12:00 today, our opposition to their motion was submitted to Judge Kelly O'Neill Levy's part, and Mr. Schram's counsel has until, I believe, 5:00 tomorrow to address the issues that we raised in those

papers.

THE COURT: That concerns whether she can move forward, but only with respect to the one child that's still in Iceland?

MR. BEYDA: Correct. In part. There are other issues, obviously, but that is one of the key components.

THE COURT: The first thing that I am going to direct is that somebody, or you jointly, I don't know how cooperatively you're working, but I would like a status letter the minute there is a ruling from Justice Levy. I'd like a copy of any orders that she issues. Is that case under seal?

MR. BEYDA: In the context of matrimonial proceedings, in theory, they are under seal and they are not open to the public. For whatever mistakes oftentimes happen in the clerk's office, that's always beyond everybody's control.

THE COURT: Do the parties have an objection to my speaking to Justice Levy, whom I do know?

MR. BEYDA: On behalf of the respondent, we have no objection, your Honor.

THE COURT: Mr. Min.

MR. MIN: Your Honor, we would have no objection to your Honor speaking to Justice O'Neill Levy.

May I just respond quickly to Mr. Beyda's comments?

THE COURT: Yes.

MR. MIN: So the Court is aware, respondent's counsel

and we all know each other, so I think we will be working very cooperatively in this case. I don't foresee any issues. Hopefully, that puts your Honor's mind at ease a little bit with respect to that. Petitioner has separate counsel in the state court proceedings. Although I'm aware of what's going on there, I'm not representing him in those proceedings.

I will state, it does seem a little unusual to see the four-year-old child come back here, where this Court may or may not -- obviously, we will see what the ultimate determination is -- direct that the habitual residence was in Iceland and sending the other two children back there. I am not sure why, in the middle of a worldwide pandemic, we would want to be shuttling kids back and forth unnecessarily.

If we can have an expedited trial, the four-year-old should stay in Iceland, be comfortable, continue with the schooling. If the habitual residence is to be determined to be the United States, we can figure out what comes next. And if the habitual residence is in Iceland, then the kids will be reunited in Iceland.

THE COURT: I am not going to decide that issue today. I don't have enough information to impact a young child and start, as you say, hauling people around the world in the middle of a pandemic. I'm just not going to do that. The circumstance we are in, frankly, where two children are here and one is there, appears to be the result of whatever

maneuverings were going on, for lack of a better word, between the two parties here.

Mr. Schram, are you in Iceland now?

MR. SCHRAM: Correct.

THE COURT: Your son is with you. I don't know if it's a son or a daughter. The child is with you.

MR. SCHRAM: My son is with me and he goes to school.

THE COURT: Are the other two children boys or girls?

MR. SCHRAM: The oldest one is a girl, and her name is --

THE COURT: You don't need to tell me their names. I do want to respect their privacy. Just tell me if they are boys or girls.

MR. SCHRAM: Boy and girl.

THE COURT: The oldest is a girl and the younger one, the baby, is a boy?

MR. SCHRAM: Yes.

THE COURT: This is what I need to do today. As you say, I had identified that the primary issue is where is the habitual residence. It's a fairly discrete, narrow issue.

To the extent Ms. Zarak has a defense that she is raising, I take it you are saying, the specter that was raised about grave risk of harm, certainly that's a consideration that I ought to take into account, and I assume that that will also be the subject of whatever discovery is going to take place.

As you say, there is no answer on file yet to the petition. So I will enter a schedule for expedited conduct of this case.

Have the parties talked at all about a proposed schedule?

MR. BEYDA: Not as of yet, your Honor, but we will do so.

THE COURT: I am going to do the following then. I will tell you orally the schedule that I was proposing, but I will give you the opportunity to talk about it and to be back to me by tomorrow. It's now 1:30, so you can be back to me -- frankly, you can be back to me by the close of the day today because it's important that we keep this moving about any concerns or issues or modifications you want to make to this proposed schedule.

Ms. Zarak should answer the petition on or before August 23.

Discovery. Initial disclosures where you exchange basic information, to the extent there is any, that you don't know about or haven't already exchanged, you got by August 25. Any demands for written discovery by August 27 with responses due a week later, I think it is, by September 2. I would then set a fact discovery deadline, which would include whatever depositions you think -- are you contemplating depositions?

MR. BEYDA: I think it's something that counsel will discuss.

THE COURT: I will leave that to you then.

Whatever fact discovery you want to take should be completed by September 13. If you are contemplating experts, you should disclose them by the 30th of August with rebuttal disclosures by September 13. I am contemplating that we would do a hearing the week of September 27. In advance of that, you need to exchange witness lists and exhibit lists. I would suggest that you do that by September 21. Pretrial briefing by that day as well. And we would do a final pretrial conference on -- let me just take a quick look. If we are talking about doing a trial the week of the 27th, we would do a final pretrial conference like the Thursday before, the 23rd.

Again, I'm throwing these dates out to you. Presumably you have taken them down. I will give you until the close of business today to talk about them and to get back to me with any requested modifications. If you can't work it out consensually, you can each tell me what your positions are.

I will tell you, the week of the 27th, which is when I'm proposing to do this hearing, I'm the emergency part judge. I may well get interrupted by emergency -- other -- I consider this an emergency application, frankly. I may get interrupted by other emergency applications or warrants and those sorts of things. I also had a sentencing on, I think it's the 28th. We will just have to work around the other commitments that I have that day.

This is a bench trial, correct?

MR. MIN: Yes.

THE COURT: We will work cooperatively together. That, I assume, we will be doing in person, correct?

MR. BEYDA: That works.

Your Honor, I apologize if I'm interrupting.

THE COURT: That's all right.

MR. BEYDA: In terms of the scheduling, I am observant. The only request I have, I will be out for the first part of the last week of September in observance of the Jewish holidays.

THE COURT: The week of the 27th, you mean?

MR. BEYDA: Yes.

THE COURT: I'm sorry. You have to educate me a little bit. Tell me what dates we are talking about.

MR. BEYDA: That would be Monday, the 27th and actually the -- let me just -- I'm looking at my calendar. The 28th and 29th I will be out in observance of the Jewish holiday. I would respectfully request that the hearing in this matter take place, if it's convenient for the Court, the week of October 4.

THE COURT: Let me just ask you. The 27th, 28th, and 29th, or are you saying the evening of the 27th into the 29th?

MR. BEYDA: Correct, your Honor.

THE COURT: What holiday?

MR. BEYDA: The 28th is Shemini Atzeret. I can spell that, if you'd like.

THE COURT: That's OK. I am not wrong that Rosh Hashanah is much earlier in the month.

MR. BEYDA: That's correct. I happen to be the guy who finds every Jewish holiday to observe.

THE COURT: I respect that completely. Absolutely not an issue. I just was not aware.

Is there an objection to that? Frankly, I will tell you, in terms of the Court's convenience, the week of October 4 I'm still on part I, the emergency judge, but I don't have all of these other things in terms of sentencings already scheduled, so I can give you more uninterrupted attention the week of the 4th. But I am mindful, this is a family that's not together, so I'm aware of that.

Is there an objection to doing this the week of the 4th?

MR. MIN: No, your Honor.

MS. CHEMTOB: Your Honor, I believe, based on the urgency of this matter, if you want me to step in for Mr. Beyda those days, I will, or if we could expedite it and move it up closer, in September, but I really do not think we can wait much longer without [redacted] being returned to New York to be with his siblings and mother.

THE COURT: I am going to leave it all to you to

speak. I don't mean to interrupt you. Please don't say the children's names on the record.

MS. CHEMTOB: My apologies.

THE COURT: That's all right.

Why don't you all speak to each other and to your clients about this, their desires. I thought I saw them both say the week of the 4th would work, but I don't want to interpret body language and nodding. I'll give you all the opportunity to speak to each other and to your clients.

I have a strong preference for doing it the week of October 4, just because I want to give you my continuous period of time where I don't have to keep being interrupted. I can't promise the week of the 4th that warrants won't come in and I won't have to take a brief recess to deal with them, but it is a much less difficult week for me than the week of the 27th, where each day I already know I have sentencing two days out of the four, and I have court committee meetings the other two days. The week of the 4th is definitely better.

But I am very mindful of and want to do what's right and best for this family. Why don't you talk to each other and when you get back to me later today, you can let me know whether you are going to step in for -- you are not stepping in for him -- whether you are going to take the lead.

MS. CHEMTOB: Your Honor, I will make that decision now. I will defer to October 4, that week. It sounds like

it's better for you, and this way everybody will be available.

THE COURT: I appreciate it. If you need and want to adjust some of those interim dates I gave you, I am going to leave that to all of you. Get back to me, why don't we say, by first thing tomorrow morning, at the latest, with a proposed schedule working off of the dates that I gave you because I really do want to keep this moving.

I will enter an order tomorrow that the Court does find that the petition does make out a *prima facie* case. After a hearing with the parties, the parties have agreed that the two key issues are or the central issue is, what is the habitual residence of these children.

To the extent she wishes to raise it, Ms. Zarak may put on a case with respect to the risk of harm and that the parties will be conducting discovery, and we will have a bench trial the week of the 4th and that the discovery will be on the schedule working off of the dates that I gave you.

In the interim, I will reach out to Justice O'Neill Levy just so that we are not working in any way at cross purposes to one another. With the consent of the parties, correct?

MR. BEYDA: Yes, your Honor.

MR. MIN: Yes, your Honor.

THE COURT: Is there anything else we can accomplish today?

In terms of interim relief, Ms. Zarak not remove the two children who are with her in New York from the jurisdiction of the Court, the two children that are referred to in the petition as EZ and SZ, the six-year-old and the two-year-old children.

In addition, I would ask you, Ms. Zarak, to please surrender your passport and the passport of the two children. I'm not going to ask you to give them to me. I would like you to surrender them to your counsel, who is directed not to return them to you without permission of the Court.

Is there any other interim provisional relief that's appropriate at this time?

MR. BEYDA: Your Honor, if I might, the limitation to the Southern District might be a little bit restrictive in that if Ms. Zarak were to leave the lower part of Manhattan and go into Brooklyn, which I think is the Eastern District.

THE COURT: It is. Where are the children living right now?

MR. BEYDA: They live in Manhattan. I would just ask if the parameters can be broader than Manhattan and the Southern District to perhaps include Brooklyn and/or Long Island in the interest of the children, if Ms. Zarak were to leave Manhattan.

THE COURT: Is there a need for the children to go to Brooklyn or Long Island?

MR. BEYDA: Just in terms of a day trip, whether it's to the shore or a park. I'm not suggesting in any way that Ms. Zarak is leaving on a plane, leaving the State of New York, by any means, or even the immediate area.

THE COURT: Long Island and Nassau, Brooklyn, are the Eastern District of New York. If there is no objection, I will allow travel in the Eastern and the Southern Districts of New York.

Is there any objection to that, Mr. Min?

MR. MIN: No objection, your Honor.

MR. BEYDA: Thank you, your Honor.

THE COURT: You, Mr. Beyda, will hold the passports for Ms. Zarak and her two children. I am holding you responsible that they not be returned without leave of Court.

MR. BEYDA: Understood.

THE COURT: Ms. Zarak, do you have a U.S. passport and other passports? Just U.S.

You have some kind of a sound filter, so your voice is coming, I hate to say it, like a cartoon character.

Counsel, do you know?

MR. BEYDA: Yes. My understanding is that Mr. Zarak actually has a passport from Mexico and a green card from the United States.

THE COURT: All of that and whatever the children have, whatever travel documents from any country, they are to

be turned over to you, Mr. Beyda.

MR. BEYDA: Understood.

THE COURT: You are strictly enjoined from removing the children from the Southern or the Eastern Districts of New York.

Is there anything else we should talk about or can accomplish today?

MR. MIN: Nothing comes to mind from our side.

THE COURT: Thank you.

Anything else from you, Mr. Beyda or Ms. Chemtob?

MS. CHEMTOB: Your Honor, if I may, I would ask that Mr. Schram's passport also be secured so that he also is not a flight risk with the middle child in Iceland. We need security that that child is staying in place as well.

Of course, in the alternative, I would be remiss not to ask the Court for the immediate return of the middle child at this time.

THE COURT: I cannot do that. I don't have jurisdiction.

MS. CHEMTOB: It would be remiss for me not to ask, your Honor.

THE COURT: Let me ask counsel or Mr. Schram directly.

Mr. Min, I don't want to put your client on the spot. Is there any plan to travel with the other child?

MR. MIN: Your Honor, no. I will note, because I

think this has to be said, that counsel is fully capable of initiating a Hague proceeding in Iceland if they so deem appropriate.

THE COURT: I said, I do not have jurisdiction. I will say this, though. Mr. Schram has invoked the jurisdiction of this Court, so I do have jurisdiction over him.

Mr. Schram, I do direct that if you have any plans to take this child anywhere, you communicate that to your counsel who will communicate it to the Court. I can't go beyond that jurisdictionally, but I can advise you. I have no reason to believe you are going to flee, since you initiated this proceeding here. If you don't show up, basically, your case can be dismissed for failure to prosecute. So that's as far as I can go today.

MR. SCHRAM: Understood.

MR. MIN: Yes, your Honor. I understood.

THE COURT: Obviously, Mr. Schram has invoked the jurisdiction of the Court, so he apparently wishes to be here.

Nothing further then. Thank you, everybody, very much. I appreciate that you are working cooperatively. I will do my best to help sort through what's a difficult situation.

Everybody please stay safe and healthy. Stay safe from COVID. I wish everyone a good rest of the day.

(Adjourned)